## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CANDIE NELSON, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.                                Case No. 8:18-cv-02678-JSM-CPT

HEALTHRIGHT, LLC

      Defendant.

_____/


## PARTIES' JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
## SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

BRIEF INTRODUCTION ..................................................................1

I.  FACTUAL BACKGROUND.........................................................3

    A.  WARN ACT ................................................................3

    B.  DEFENDANT'S ALLEGED WARN ACT VIOLATIONS.......4

II. LITIGATION PROCEDURAL STATUS.........................................6

    A.  CLASS CERTIFIED PRIOR TO SETTLEMENT ...................6

    B.  NELSON CONDUCTED SUBSTANTIAL DISCOVERY ........6

    C.  THE SETTLEMENT NEGOTIATIONS ...............................7

III.  SETTLEMENT OVERVIEW ....................................................7

    A.  THERE ARE 138 CLASS MEMBERS.........................................8

    B.  TOTAL SETTLEMENT AMOUNT: $75,000...........................9

    C.  HEALTHRIGHT WILL PAY FOR CLASS
       ADMINISTRATION ..................................................9

    D.  DIRECT PAYMENT .................................................9

    E.  ATTORNEYS' FEES AND COSTS .........................................10

    F.  RELEASE OF CLAIMS.........................................................10

    G.  PRELIMINARY APPROVAL AND NOTICE.......................11

    H.  CLASS MEMBERS' RESPONSE TO THE PROPOSED
       SETTLEMENT .......................................................12

ARGUMENT......................................................................12

I.  THE PARTIES PROVIDED THE BEST PRACTICABLE
    NOTICE .................................................................12

II. THE SETTLEMENT IS FAIR, ADEQUATE, AND
    REASONABLE.......................................................14

    A.  STANDARD AND PROCESS FOR APPROVAL...................14

    B.  THE SETTLEMENT SHOULD BE APPROVED ..................16

CONCLUSION ..................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Ass 'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ................................................................................................................14

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) .......................................14

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)....................................................15

*Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 (S.D. Fla. May 14, 2007)....................................................................................................15

*In re Checking Account Overdraft Litig.*, 275 F.R.D. at 661 ..................................16

*In re U.S. Oil and Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) ..................................14

*Kephart v. Data Sys. Int'l, Inc.*, 243 F. Supp. 2d 1205 (D. Kan. 2003).....................3

*Middleton v. Sonic Brands L.L.C.*, Case No. 6:13-cv-386-Orl-28KRS, 2013 WL 4854767 (M.D. Fla. Sept. 10, 2013) .....................................................................11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .......................13

*Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...........................................13

*Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988).............................16

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION § 21.632, at 414 (4th ed. 2004) ........15

**Rules**

*20 C.F.R. § 639* ............................................................................... 3, 4, 6

29 U.S.C. §2101 ...............................................................................1, 6

29 U.S.C.A. § 2102(b)(2)(A) ...........................................................1, 4

29 USC 2101(a)(3)(B) .....................................................................1, 3

## BRIEF INTRODUCTION

Plaintiff Candie Nelson ("Nelson" or "Class Representative"), on behalf of herself and the Class Members, and Defendant Healthright LLC ("Defendant" or "Healthright") hereby file this Joint Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law (the "Motion").  The Hearing on Final Approval is scheduled on November 1, 2021.  (DKT 54).

Nelson, individually and on behalf the Class, asserts that Healthright violated the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 et seq. (the "WARN ACT"), by not providing sixty days' advance notice of her layoff, and the layoff of the other members of the Class.  Healthright denies violating the WARN Act.  Specifically, Healthright contends it qualifies for one or more exceptions for providing the sixty days' advanced notice under the WARN Act because it had entered into a sealed (i.e. confidential) plea deal in unrelated criminal matters brought by the U.S. Department of Justice (herein "Plea Agreement").  A copy of the Plea Agreement is attached as Exhibit A to Healthright Affidavit attached as Exhibit 3 to DKT 52.  Prior to the Plea Agreement being unsealed, Healthright was prohibited from discussing the plea, including discussing with employees the potential impact on the continued operations of the business or employment of the Class Members. As part of the Plea Agreement, and in resolution of parallel civil proceedings brought by the

United States Department of Justice, Healthright paid a substantial civil penalty and remains liable for substantial restitution.  In the Plea Agreement the court recognized that "no precise determination of the guideline fine range is required because it is readily ascertainable that the defendant [Healthright] cannot and is not likely to become able to pay the minimum of the guideline fine range." In other words, Healthright's assets have been or will be fully depleted to pay the fine imposed by the United States Government. After the Plea Agreement was unsealed, Healthright was effectively forced to abruptly cease operations and lay off its employees because its customers stopped doing business with Healthright.

Nelson, individually and on behalf the Class Members, and Healthright (hereinafter "the Parties"), have reached a proposed agreement resolving in this putative class action ("Settlement"). A copy of the proposed Settlement is attached as Exhibit 1 to DKT 52.

The Settlement warrants final approval.  It is fair, adequate, and reasonable under all relevant factors used by courts in the Eleventh Circuit.  Out of the 138 Class Members, there was not a single objection to the Settlement and only four opt-out requests.  Thus, other Class Members evidently share in Class Representative's belief that the proposed Settlement should receive final approval. Accordingly, Nelson and the Defendant request that the Court finally approve the Settlement and enter an Order granting final approval.

## I.    FACTUAL BACKGROUND

In this litigation, Nelson alleges that Healthright violated the WARN ACT by not providing the Class Members sixty days' advance notice prior to their layoffs. Per the Complaint, Nelson seeks statutory damages, attorneys' fees, and litigation costs from Defendant. (DKT 1).

### A.    WARN Act

The WARN Act requires covered employers provide notice of at least 60 days of a "plant closing"  or "mass layoff" of more than fifty employees at a "single site of employment." 29 USC 2101(a)(3)(B); WARN Act, § 2(a)(2), 29 U.S.C.A. § 2101(a)(2); 20 C.F.R. § 639.3(i). Under the WARN Act, employers who do not provide the requisite notice must compensate employees who suffer an employment loss for each day of the violation. WARN Act, § 2 et seq., 29 U.S.C.A. § 2101 et seq.; *see also Kephart v. Data Sys. Int'l, Inc.*, 243 F. Supp. 2d 1205 (D. Kan. 2003).

The WARN Act however provides exceptions for the full 60-notice requirements. One such exception is the Unforeseeable Business Circumstances exception, which applies when the plant closing is caused by business circumstances that were not reasonably foreseeable at the time that 60-day notice would have been required. 29 U.S.C.A. § 2102(b)(2)(A); *see also* 20 C.F.R. § 639.9(b).

## B.    DEFENDANT'S ALLEGED WARN ACT VIOLATIONS

Nelson alleges that Healthright failed to provide the 60 days advanced notice to the Class Members of their layoffs in compliance with the WARN.  Healthright admits that it did not provide 60 days advanced notice but contends that it was not required to do so under one or more exceptions, including the Unforeseeable Business Circumstances exception.  Healthright also asserts that it is entitled to a public policy exception based on Healthright's obligation to keep its Plea Agreement with the US Department of Justice confidential until at least October 10, 2018 (explained in more detail below).

Healthright was a marketing company that became the focus of a criminal investigation by the Department of Justice.  The criminal matter generally involved violations of the False Claims Act in submitting requests for reimbursements of prescription drugs.  Healthright plead guilty to a single count of conspiracy to commit health care fraud and a single count of conspiracy to commit wire fraud as a condition of the Plea Agreement.  The Plea Agreement was initially sealed.

Healthright, as part of its Plea Agreement, committed to not publicly communicate about the guilty plea before it was unsealed.  The Plea Agreement was unsealed on or about October 10, 2018.  The confidentiality of the Plea Agreement was critical because a managing member of Healthright had agreed to be a witness in another criminal matter.  Any breach of the confidentiality

provision could have voided the Plea Agreement and potentially subjected Healthright to greater penalties than what it faces under the Plea Agreement. Additionally, as part of the Plea Agreement, Healthright and the U.S. Attorney's office agreed to recommend to the court that Healthright be jointly and severally liable for restitution in amount of $5,000,000.00, and possibly more because the full amount of restitution will not be known until the time of sentencing. Healthright still awaits sentencing.

The Plea Agreement was the impetus for Healthright ceasing operations as once the plea became known, Healthright could not effectively do business and it was forced to shut down operations and lay off employees. Based on that confidentiality commitment, HealthRight could not provide WARN notices to any Class Member prior to the date the Plea Agreement was unsealed. Indeed, approximately 2/3 of the Class Members were laid off either before or about the same time that Healthright was first permitted to publicly comment on the Plea Agreement.

Furthermore, as part of the Plea Agreement, and in resolution of parallel civil proceedings brought by the United States Department of Justice, Healthright paid a substantial civil penalty and remains liable for substantial restitution. This further depleted the resources of Healthright. The full amount of restitution will not be fully known until the time of sentencing. Healthright represents that it has

essentially no financial assets - a representation confirmed in the Plea Agreement

wherein the court recognized that "no precise determination of the guideline fine

range is required because it is readily ascertainable that the defendant [Healthright]

cannot and is not likely to become able to pay the minimum of the guideline fine

range." *See* Exhibit A to financial affidavit attached as Exhibit 3 to DKT 52.

## II.    LITIGATION PROCEDURAL STATUS

### A.    Class Certified Prior to Settlement

On May 31, 2019, Nelson moved for certification of the putative class.

(DKT 14). On July 18, 2019, the Court granted the motion and certified the class

defined below:

> *Any employee employed by Defendant HEALTHRIGHT, LLC, who was not given a minimum of 60-days advance written notice of termination and whose employment was terminated as a result of a "mass layoff" or "plant closing" as defined in 20 C.F.R. § 639.3 and 29 U.S.C. § 2101 under the Worker Adjustment and Retraining Notification [WARN] Act of 1988. The class does not include part-time employees as defined under 29 U.S.C. § 2101(a)(8).*

The Class Members consists of 138 individuals.

### B.    Nelson conducted substantial discovery

Nelson engaged in substantial discovery related to the purported class and

Healthright's defenses.  Nelson served extensive written discovery to Healthright,

and the company thoroughly responded, including Healthright producing hundreds

of pages of documents/data related to the Class Members and public filings related

to the Plea Agreement and conducted the deposition of Healthright's Managing

Member, Scott Roix.

### C.   The Settlement Negotiations

On February 20, 2020, the Parties participated in mediation before mediator

Charles W. Ross.  The Parties did not reach a resolution at the mediation, but the

principal issues of the claims were thoroughly discussed, including that even if the

Class Members prevailed and secured a judgment against Healthright there was

substantial risk all or none of the judgment would not be recoverable due to

Healthright's dire financial status.

The Parties continued discussions focused on resolution thereafter. After

months of back and forth negotiations, the Parties were able to reach a resolution

memorialized in the Settlement.

## III.   SETTLEMENT OVERVIEW

The Settlement represents a compromise and settlement of highly disputed

claims after extensive investigation, discovery, and protracted settlement

negotiations. Nothing in the Settlement is intended or will be construed as an

admission by Healthright that the claims in the litigation have merit or that

Healthright bears any liability to the Class Representative or the Class Members on

those claims or any other claims, or as an admission by the Class Representative or

the Class Members that Healthright's defenses in the Action have merit. The total

Gross Settlement Amount is $75,000.00.  The Gross Settlement Amount will also be used to pay Class Counsel Fees and Litigation Expenses Payment, subject to Court approval.  The Settlement Agreement also provides that, in addition to amounts paid to the Class Members, Healthright will bear the entire cost of the Settlement Administrator, including mailings of the class notification.

Class Counsel believes that the claims are meritorious.  However, Class Counsel has also considered the substantial risks of de-certification at least to certain portions of the class, summary adjudication, trial, and the possibility that the case, if not settled now, might result in no actual recovery at all due to the dire financial situation of Healthright.  Having carefully weighed all these considerations, Class Counsel and the Class Representative are satisfied that the Settlement Agreement is in the best interests of the Class.

In short, the Parties believe the terms of the Settlement are fair, adequate, and reasonable and should receive final approval. The terms of the Settlement are summarized below. The full text of the Settlement is attached as Exhibit 1 to DKT 52. The material terms include the following:

## A. THERE ARE 138 CLASS MEMBERS

The class, which was previously certified, consists of all full-time employees of Healthright that were not provided 60 days advanced notice of their termination

8

when Healthright ceased doing business and closed its operations. There are 138 Class Members.

**B.    TOTAL SETTLEMENT AMOUNT: $75,000**

Pursuant to the Settlement the Total Gross Settlement Amount is $75,000.00.  Unless a Class Member requests not to participate in the settlement and/or fails to submit a Confirmation of Address form to the Settlement Administrator, each Class Member will receive an equal portion of the Total Gross Settlement Amount, after the award to Class Counsel Fees and Litigation Expenses Payment are deducted.

**C.    HEALTHRIGHT WILL PAY FOR CLASS ADMINISTRATION**

Healthright will be a 100% responsible for payment to the Settlement Administrator for services rendered and costs incurred. The payment to the Settlement Administrator will <u>not</u> be deducted from the Gross Settlement Amount.

**D.    DIRECT PAYMENT**

The Class Members will, upon submitting a Confirmation of Address Form, receive their portion of the Settlement proceeds – unless he/she timely submits Request Not to Participate in Settlement.  There is no lengthy or confusing claims process.  Subject to this Court's final approval of the Settlement, the Settlement Administrator will directly send the Settlement payments to each Class Member that returned a Confirmation of Address Form prior to November 1, 2021.

### E.    ATTORNEYS' FEES AND COSTS

The Settlement Agreement provides that Class Counsel will seek an award of not more than $24,750.00 of total Gross Settlement Amount in attorneys' fees and costs, which Class Counsel has recently sought.(Dkt. 57). Class Counsel waives and will not seek any additional amounts as costs and expenses. Such amount will be paid from the Gross Settlement Amount if awarded by the Court, subject to the terms of the Settlement.

### F.    RELEASE OF CLAIMS

In exchange for the payments made to the Class Representative and the Class Members as set forth in the Settlement, the Class Representative and the Class Members shall release claims against Defendant. The Class Members' release is limited to WARN Act claims and derivative type claims based on their termination of employment by Healthright.

For her part, in addition to the releases of her WARN Act and derivative type claims arising from her termination. Class Representative Candie Nelson executed a broad, general release of any and all claims, demands, rules or regulations, or any other causes of action in favor of Healthright.  *See* Exhibit 1, § III(E)(1), to DKT 52.  This general release is above and beyond the release of the Warn Act claims released by the Class Members which was separately negotiated in exchange for a General Release Payment of $2,000 out of the Gross Settlement

Amount. *See* Exhibit 1, § III(A)(1), to DKT 52. The General Release Payment is proper because it is paid in exchange for additional consideration beyond the class members. *See generally, Middleton v. Sonic Brands L.L.C.*, Case No. 6:13-cv-386-Orl-28KRS, 2013 WL 4854767, at *3 (M.D. Fla. Sept. 10, 2013) (approving a settlement agreement providing $100 as separate consideration for a general release in the FLSA context).

Pursuant to the terms of the Settlement, Healthright denies all allegations and claims asserted against it in the Complaint, and denies any and all wrongdoing.

### G.    PRELIMINARY APPROVAL AND NOTICE

On December 23, 2020, the Parties filed a Joint Motion for Preliminary Approval of the Settlement. (DKT 52). On January 6, 2021, the Court entered the Preliminary Approval Order. (DKT 53).

On January 15, 2021, the Settlement Administrator, mailed and emailed (to whom email addresses were available) the Court approved Notice of Class Action Settlement to each Class Member. *See* attached Exhibit 1, American Legal Claim Services Decl. at ¶ 4. At that same time, the Settlement Administrator also created and maintained a case website, www.healthright-recovery.com, that provided information stated in the Class Action Settlement. The website contained sections for important court documents, key dates and FAQs. *See* Exhibit 1, American Legal Claim Services Decl. at ¶ 6.

### H.    CLASS MEMBERS' RESPONSE TO THE PROPOSED SETTLEMENT

There are zero (0) Settlement Class Members who objected to the Settlement, and only four (4) Class Members opted out. *See* Exhibit 1, American Legal Claim Services Decl. at ¶¶ 9-10.  Further, to date, thirty-four (34) Class Members returned Confirmation of Address forms.  *See* Exhibit 1, American Legal Claim Services Decl. at ¶¶ 9-10.  Class Members have until November 1, 2021 to return their Confirmation of Address Forms.

<u>**ARGUMENT**</u>

The Settlement is fair, adequate, and reasonable. The Court should grant the Parties Motion for Final Approval.

### I.    THE PARTIES PROVIDED THE BEST PRACTICABLE NOTICE

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal due process requirements must be satisfied.  *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1378 (S.D. Fla. 2007).  Absent class members must receive notice and an opportunity to be heard and to participate in the litigation whether in person or through counsel. Fed. R. Civ. P. 23(c)(2)(B). The notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Phillips Petroleum Co. v. Shutts*,

12

472 U.S. 797, 811-12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).

Here, there were three forms of notice: direct mail Notice, email Notice and a website. *See* Exhibit 1, American Legal Claim Services Decl. at ¶¶ 4-7. Defendant provided the Settlement Administrator with contact information for 138 Settlement Class Members. On January 26, 2021, the Administrator mailed the Court-approved Class Notice via U.S. First Class Mail, to each Settlement Class Member. *See* Exhibit 1, American Legal Claim Services Decl. at ¶¶ 4.  The same day, the Administrator emailed the Court-approved Class Notice to 128 Settlement Class Members for whom had valid email addresses.  *See* Exhibit 1, American Legal Claim Services Decl. at ¶ 4.  Of the initial 128 emailed Settlement Notices, twenty (20) were returned as undeliverable.  *See* Exhibit 1, American Legal Claim Services Decl. at ¶ 5.  Of the initial 138 mailed Settlement Notices, eleven (11) were returned as undeliverable.  *See* Exhibit 1, American Legal Claim Services Decl. at ¶ 5.  For the undeliverable mailed Notices, the Settlement Administrator located new addresses for ten (10) Class Members, and remailed Notices to each. Four (4) of the remailed Notices were returned by the USPS.  Of the five (5) Class Members with undeliverable Notices through the USPS, four (4) Class Members received a Notice by email.  In total, only one (1) Class Member that did not

receive a Notice by email or mail – resulting in a fantastic 99.28% delivered rate. *See* Exhibit 1, American Legal Claim Services Decl. at ¶ 7.

## II.   THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

The Settlement Agreement presented to the Court for preliminary approval represents a fair and reasonable resolution of this dispute. It will provide financial relief to the Class members in the form of cash payments and will relieve the Parties of the burden of litigation.

### A. STANDARD AND PROCESS FOR APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass 'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class

actions that have the well-deserved reputation of being the most complex." (*citing*

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

Judicial approval typically involves a two-step process of "preliminary" and

"final" approval. *See* MANUAL FOR COMPLEX LITIGATION § 21.632, at 414

(4th ed. 2004); *Fresco v. Auto Data Direct, Inc*., No. 03-61063-CIV, 2007 WL

2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step,

requiring the court to "make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms." *Id*. (citing Manual for

Complex Litigation § 21.632).  In the second step, after notice to the class and time

and opportunity for absent class members to object or otherwise be heard, the court

considers whether to grant final approval of the settlement as fair and reasonable.

*Id*.

When determining whether a settlement is ultimately fair, adequate, and

reasonable, courts in the Eleventh Circuit have looked to six factors: "(1) the

likelihood of success at trial; (2) the range of possible recovery; (3) the point on or

below the range of possible recovery at which a settlement is fair, adequate and

reasonable; (4) the complexity, expense and duration of litigation; (5) the

substance and amount of opposition to the settlement; and (6) the stage of

proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.

Courts may also consider the judgment of experienced counsel for the plaintiff

class. *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988).

Settlement negotiations that involve arm's length, informed bargaining with the aid

of experienced counsel support a preliminary finding of fairness. *See In re*

*Checking Account Overdraft Litig*., 275 F.R.D. at 661-62 (citing MANUAL FOR

COMPLEX LITIGATION, Third, §30.42 (West 1995)) ("A presumption of

fairness, adequacy, and reasonableness may attach to a class settlement reached in

arm's length negotiations between experienced and capable counsel after

meaningful discovery.") (internal quotation marks omitted).

### B.    THE SETTLEMENT SHOULD BE APPROVED

The Settlement before the Court is well within "the range of possible

approval" and should be approved in all respects.  The Settlement will produce

meaningful benefits for the Class Members.  Indeed, the benefits of the Settlement

likely exceed any recovery that may be had through verdict or judgment due to

Healthright's closed business operations and dire financial position.  Further,

Healthright will bear the cost of notice and administration. The Class Members

will receive this relief without delay and risks of litigation.

The Settlement was the product of serious, informed, arm's length, and non-

collusive negotiations by competent and experienced counsel.  Before commencing

settlement negotiations, the Parties engaged in briefing and substantial discovery.

After review and analysis of hundreds of documents and spreadsheets, dozens of

subsequent conference calls, the exchange and review of information, and

mediation with an experienced mediator, Charles Ross, the Parties reached this

Settlement. In addition, Class Counsel, who recommends the settlement, are skilled

and experienced in class actions. *See* Decl. of Miguel Bouzas attached as Exhibit C

to DKT 14; *see also* Order Granting Rule 23 Motion for Class Certification and

approving Miguel Bouzas a Class Counsel (DKT 18, pg12).

      The Settlement Agreement has no obvious deficiencies, and does not

improperly grant preferential treatment to the Class Representative, or any segment

of the Class Members. The Class Members will equally divide the Gross

Settlement Amount, after payment of the Class Counsel Fees and Litigation

Expenses Payment awarded by the Court.

      Further, Healthright contends that it has meritorious defenses to the claims

and to issue of class de-certification, as fully set forth in their Answers and

Affirmative Defenses and its Opposition to Class Certification. *See* DKTs 6, 17.

For instance, Healthright contends that it was prohibited from providing 60 days

advanced notice of the Class members' terminations due to the terms of its Plea

Agreement with the Department of Justice, which was initially sealed.  Per the

terms of the Plea Agreement, Healthright was prohibited from publicly discussing

the Plea Agreement until it was unsealed.  By the time the Plea Agreement was

unsealed, almost 2/3 of the Class Members had already been or were about to be

laid off (and, thus could not have received any advanced notice). The Plea

Agreement effectively caused Healthright's business to close down due to lack of

customers and payments including receipt of payment in arrears for services

already performed.

In addition to the legal defenses, there is the practical matter of Healthright's

ability to satisfy any judgment.  Healthright is no longer operating and is not

receiving any revenue. As part of its Plea Agreement, and in resolution of parallel

civil proceedings brought by the United States Department of Justice, Healthright

paid a substantial civil penalty and remains potentially liable for substantial

restitution.  Additionally, Healthright and the U.S. Attorney's office agreed to

recommend to the court that Healthright be jointly and severally liable for

restitution in the amount of $5,000,000.00, and possibly more because the full

amount of restitution will not be known until the time of sentencing.  Accordingly,

Healthright faces substantial restitution liability.  Furthermore, Healthright's assets

have been or will be fully depleted to pay the fine imposed by the United States

Government – a fact the court recognized while approving the Plea Agreement.

The court specifically stated that "no precise determination of the guideline fine

range is required because it is readily ascertainable that the defendant [Healthright]

cannot and is not likely to become able to pay the minimum of the guideline fine

range." (emphasis added).

Under the Settlement Agreement, all Class Members are entitled to an equal portion of the Gross Settlement Amount, less the Class Counsel Fees and Litigation Expenses Payment approved by the Court. The intrinsic value of the net settlement payment to Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation, including that Healthright could prevail on a motion to decertify the Class or summary judgment holding that there was no WARN violation because notice was not provided per the confidentiality terms of the Plea Agreement, and the high likelihood that any judgment awarded to Class Members would effectively be unrecoverable due to Healthright's dire financial position. The costs and uncertainty of litigation, and the expense and delay that accompany the appeal process, support approval.

The Settlement is therefore reasonable, adequate, and fair.

## <u>CONCLUSION</u>

This Settlement is fair, adequate, and reasonable. Accordingly, Parties' Motion for Final Approval should be granted and the Court should approve the Settlement Agreement.

Dated this 7th day of June, 2021.

Respectfully submitted,

/s/ Dabney D. Ware                              /s/ Miguel Bouzas

Kevin E. Hyde, Esq.                    Miguel Bouzas, Esq.
FL Bar No. 768235                      FL Bar No. 48943
Dabney D. Ware, Esq.                   FLORIN GRAY BOUZAS OWENS, LLC
FL Bar No. 95990                       16524 Pointe Village Drive, Suite 100
FOLEY & LARDNER LLP                    Lutz, FL 33558
One Independent Drive, Suite 1300      727.254.5255 (Telephone)
Jacksonville, FL 32202                 727.483.7942 (Facsimile)
904.359.2000 (Telephone)               Miguel@fgbolaw.com
904.359.8700 (Facsimile)
khyde@foley.com
dware@foley.com

*Attorneys for Defendant HealthRight,*    *Attorneys for Plaintiff, Candie Nelson*
*LLC*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June, 2021, I electronically

filed the foregoing with the Clerk of the Court by using the CM/ECF System.

*/s/ Dabney D. Ware*
Attorney for Defendant